UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TROY CULBERTSON,

                Plaintiff,             **MEMORANDUM and ORDER**

      — against —                       08-CV-4838 (SLT) (LB)

WARDEN CAMERON, MDC DIRECTOR
OF MEDICAL STAFF, MDC DIRECTOR OF
PRISONS, *et al.*,

                Defendants.
------------------------------------------------------------X
**TOWNES, United States District Judge:**

      Troy Culbertson ("Plaintiff"), a pre-trial federal prisoner appearing *pro se*, brings this action pursuant to the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)[1] against United States prison employees and medical staff at Metropolitan Detention Center Brooklyn ("MDC"), alleging negligence and violation of his Eighth Amendment rights. Specifically, Plaintiff seeks $60 million in damages against MDC Warden Cameron Lindsay, incorrectly s/h/a "Warden Cameron," the MDC Health Services Administrator, s/h/a "MDC Director of Medical Staff," and the Bureau of Prisons ("BOP") Director, s/h/a "MDC Director of Prisons" for negligence in failing to install guardrails on bunk beds at the MDC and for the inadequate medical treatment after falling from his bed. *See* Compl. & Am. Compl. Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56.

## *BACKGROUND*

---

[1] Although Plaintiff's initial Complaint states that this action is pursuant to 42 U.S.C. § 1983, because the individuals defendants are federal officers, the Court construes Plaintiff's claims as *Bivens* and FTCA causes of action. *See, e.g., Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) (construing *pro se* § 1983 claims against federal defendants as *Bivens* claims)

Plaintiff was at all relevant times to this litigation a pre-trial detainee at the MDC. Plaintiff alleges that on November 7, 2008, he fell from the top bunk of his bed and suffered injuries as a result of his fall and that he subsequently received inadequate medial treatment. Am. Compl. ¶¶ 3, 15, 21, 22, 23. On November 13, 2008, Plaintiff first filed an "Inmate Request for Informal Resolution" relating to his fall. Colvin Decl. Ex. 7. Plaintiff noted on the grievance that "litigation [was] pending." Id. Plaintiff also filed another grievance on December 9, 2008, which he subsequently withdrew on December 17, 2008. Colvin Decl. Ex. 2 at 3; Am. Compl. ¶ 11.

On January 26, 2009, Plaintiff filed a Regional Administrative Remedy Appeal ("BP-10"), alleging inadequate medical care for his eye. Colvin Decl. Ex. 2. at 4. The BOP rejected the BP-10 grievance on January 29, 2009, because he failed to first file a BP-9 grievance. Id. Also on January 26, 2009, Plaintiff filed an Administrative Tort Claim with the BOP's Northeast Regional Office alleging injuries after falling out of his upper bunk, seeking $20 million. Colvin Decl. Ex. 14. On February 17, 2009, Plaintiff filed a BP-9 requesting medical care, but it was rejected because he failed to attempt an informal resolution prior to filing the BP-9. Colvin Decl. Ex. 2 at 5. He then filed a file BP-10 form alleging inadequate medical care for his eye on March 6, 2009, and it was rejected because he did not first file a BP-9 grievance. Colvin Decl. Ex. 2 at 6. Finally, on April 3, 2009, Plaintiff filed a Central Office Administrative Remedy Appeal ("BP-11") requesting medical care. Id. at 7. It was rejected because he failed to submit his appeal to the appropriate office. Id.

Plaintiff commenced this suit on November 13, 2008, against Defendants, and filed an Amended Complaint on January 22, 2009. Defendants now move to dismiss the Amended

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. The Court now considers the instant motion.

## DISCUSSION

### I. Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when there is a "lack of subject matter jurisdiction" by the federal court and Rule 12(b)(6) provides for dismissal of a claim for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003), with the exception that the party invoking the jurisdiction of the Court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof, *id.* (citing *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994)).

When ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. If a party does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Nonetheless, "[a] document

3

filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.") (internal quotations marks and citations omitted).

"Materials *de hors* the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233, 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Thus, at this stage of the litigation, courts consider only the pleadings and "documents attached to the complaint as exhibits or incorporated in the complaint by reference, . . . [as well as] matters of which judicial notice may be taken under Fed. R. Evid. 201." *Piccolo v. N.Y. City Campaign Fin. Bd.*, No. 05-CV-7040, 2007 WL 2844939, at *2 (S.D.N.Y. Sept. 28, 2007) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

## II. *Bivens* Claims

### A. Official Capacity Claims Barred by Sovereign Immunity

Plaintiff brings *Bivens* claims against individual Defendants in their official and individual capacities[2] alleging that the denial of medical treatment violated his constitutional rights under the Eighth Amendment. The claims against the Defendants in their official

---

[2] Defendants indicate that the MDC Health Services Administrator at the time of the events in Plaintiff's Complaint was Raul Campos and that the BOP Director is Harley Lappin. Nevertheless, Campos and Lappin are not properly named in the Complaint nor were they personally served with process. *See* Docket Entry Nos. 17-18. Accordingly, Campos and Lappin do not appear in this action in their individual capacity.

capacities must be dismissed based on sovereign immunity. It is well established that "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks and citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), as such a waiver is a "prerequisite" for subject matter jurisdiction in federal district courts. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999). Moreover, sovereign immunity also extends to officers of the United States when they "act in their official capacities," *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005), because such actions are "essentially a suit against the United States." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

Here, there is no consent by statute or other means permitting *Bivens* claims to be brought against the Defendants in their official capacities. *See id.* Accordingly, Plaintiff's *Bivens* claims against Warden Lindsey, the MDC Health Services Administrator, and the BOP Director in their official capacities are dismissed.

### B. Individual Capacity Claim Barred by PLRA

As Plaintiff has sued Warden Lindsay in his official and individual capacity, the Court must also review whether Plaintiff may assert a *Bivens* claim against him in his individual capacity as *Bivens* claims brought against a federal officer in his individual capacity are not barred by sovereign immunity. *Id.* The *Bivens* claim against Warden Lindsay in his individual capacity, nevertheless, is also dismissed because Plaintiff has failed to exhaust all available administrative remedies.

Pursuant to the Prisoner Litigation Reform Act ("PLRA"), an action may not be brought "with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. *See Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007) (applying PLRA's exhaustion requirement to *Bivens* claims). Congress enacted the PLRA to "eliminate unwarranted federal-court interference with the administration of prisons, and . . . to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). This exhaustion requirement is mandatory. *See Porter*, 534 U.S. at 524. Furthermore, complaints about medical treatment are considered complaints about "prison conditions." *See Neal v. Goord*, 267 F.3d 116, 119-20 (2d Cir. 2001) (prisoner's § 1983 suit containing various allegations of poor medical treatment considered "ordinary garden variety complaints about 'prison conditions'"). Moreover, exhaustion is required even if the inmate is seeking money damages, which is not an available administrative remedy. *Owusu v. Federal Bureau of Prisons*, No. 02 Civ.0915, 2003 WL 68031, at *1 (S.D.N.Y. Jan. 7, 2003) (citing *Booth v. Churner*, 532 U.S. 731, 739-40 (2001)).

Here, none of Plaintiff's numerous administrative filings occurred prior to the inception of this federal action. Plaintiff first filed an administrative grievance relating to his fall from the bunk bed on November 13, 2008—the day he commence this federal action. Plaintiff noted on the grievance that "litigation [was] pending," indicating that he filed the paperwork *after* he initiated this suit. Plaintiff also filed another grievance on December 9, 2008, which he

subsequently withdrew on December 17, 2008.[3] He then filed additional administrative remedy requests on January 26, February 17, March 6, and April 3, 2009. The BOP rejected each of Plaintiff's remedy requests, except for the one withdrawn, because he failed to follow the appropriate steps in the administrative review process. *See Owusu,* 2003 WL 68031, at *2 n.2 (BOP requires a four-step process of appeal pursuant to 28 C.F.R. § 542).

"[T]he PLRA requires an inmate to exhaust his administrative remedies *prior* to the commencement of a federal suit." *Petit v. Bender,* No. 99 Civ. 0969, 2003 WL 22743485, at *6 (S.D.N.Y. Nov. 19, 2003). "A plaintiff must . . . meet the PLRA's exhaustion requirements at the time a complaint is filed, and cannot cure a failure of exhaustion by pursuing administrative remedies while a federal action is pending." *Saunders v. Goord,* No. 98 Civ.8501, 2002 WL 1751341, at *2 (S.D.N.Y. July 29, 2002). *See also Neal,* 267 F.3d at 122 ("[A]llowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. . . . Subsequent exhaustion after suit is filed therefore is insufficient."). Additionally, to fully exhaust administrative remedies, the plaintiff under the PLRA is required to file a grievance and complete all stages of the grievance system before proceeding to federal court. *Macias,* 495 F.3d at 42 (quoting *Booth,* 532 U.S. at 741).

Here, Plaintiff ran to federal court to file this suit before lodging any grievance with MDC prison officials. Moreover, Plaintiff failed to follow BOP administrative processes or allow those processes to proceed past the initial steps before repairing to this Court. Finally, this

---

[3] Plaintiff claims that he withdrew the December 9, 2008 grievance because he was told that he would not receive medical treatment until after prison officials conducted an investigation. Am. Compl. ¶ 11. Even if true, this does not excuse that he filed the instant suit more than three weeks prior to the December 9, 2008 grievance and before he availed himself of all stages of the prison's administrative process.

Court is not aware of any reason why Plaintiff's failure to exhaust administrative remedies should be excused. For these reasons, Plaintiff did not properly exhaust his administrative remedies and thus the PLRA bars this Court's jurisdiction to review his *Bivens* claims.

Even if the PLRA did not bar Plaintiff's action against Warden Lindsay in his individual capacity, the claim would be dismissed for failure to allege Lindsay's personal involvement in Plaintiff's inadequate medical care. "Because the doctrine of respondeat superior does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006). Here, Plaintiff did not allege that Warden Lindsay: (1) directly participated in the putative constitutional violation; (2) failed to remedy the putative violation after learning of it through a report or appeal; (3) created a custom or policy fostering the putative violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the putative violation; or (5) failed to act on information indicating that unconstitutional acts were occurring. *See id.* Accordingly, Plaintiff's individual-capacity *Bivens* claim against Warden Lindsay would also be dismissed for failing to state claim upon which relief may be granted.

Finally, if Plaintiff's failure to exhaust and failure to allege personal involvement were somehow cured, Warden Lindsay would still be entitled to qualified immunity. Qualified immunity shields public officials "from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it [is] objectively reasonable for them to believe that their acts d[o] not violate those rights." *Simms v. Village of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997) (internal

citations and quotation marks omitted). Given the treatment apparently afforded to Plaintiff after his fall, *see* Am. Compl. ¶¶ 4, 6, and the lack of personal involvement in Plaintiff's treatment, Warden Lindsay plainly did not violate Plaintiff's clearly established statutory or constitutional rights.

For these reasons, Plaintiff's *Bivens* causes of action against defendant Warden Lindsay in his individual capacity are hereby dismissed.

## II. Negligence Claims

Plaintiff also asserts that Defendants acted negligently in failing to install guardrails on bunk beds at the MDC. According to Defendants, such a claim must proceed against the United States under the FTCA, which provides the exclusive remedy for "personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Paulino-Duarte v. United States*, No. 02 Civ. 9499, 2003 WL 22533401, at *1-2 (S.D.N.Y. Nov. 7, 2003) (quoting 28 U.S.C. § 2679(b)(1)).

Defendants maintain that Plaintiff's claim must be dismissed because he failed to comply with the FTCA's exhaustion requirement. "Exhaustion of administrative remedies is a prerequisite to suit in federal court under the FTCA." *Adekoya v. Fed. Bureau of Prisons*, No. 08 Civ. 1484, 2009 WL 1835012, at *2 (S.D.N.Y. June 18, 2009). Under the FTCA, "[a]n action shall not be instituted . . ., unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). In order to exhaust FTCA administrative review, an inmate must file his claim with the appropriate BOP Regional Office

9

and then appeal to the BOP General Counsel's Office. *Adekoya*, 2009 WL 1835012, at *2 (citing 28 C.F.R. §§ 543.31, 543.32; *Owusu*, 2003 WL 68031, at *2 n.2). The FTCA's exhaustion requirement "is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

In this case, it is uncontested that Plaintiff did not file an administrative tort claim with BOP alleging injuries from falling out of his bunk bed until January 26, 2009 – more than two months after he filed the instant court action on November 11, 2008. According to Defendants, the BOP has yet to deny Plaintiff's administrative claim – another predicate to filing suit under the FTCA. Thus, it is clear that, if Plaintiff had initiated this action as a FTCA claim, it would be barred as premature. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that the FTCA exhaustion requirement is jurisdictional, the subsequent denial of an administrative claim cannot cure a prematurely filed action invoking the FTCA); *Celestine*, 403 F.3d at 82 ("The FTCA requires that a claimant exhaust all administrative remedies *before* filing a complaint in federal district court.") (emphasis added).

Nevertheless, it is unclear whether the FTCA applies to Plaintiff's claims at all. Here, Plaintiff has not invoked the FTCA in his initial complaint, the Attorney General has not certified that Defendants were "acting within the scope of his office or employment at the time of the incident out of which the claim arose" to raise the FTCA, *see* 28 U.S.C. § 2679(d), and the Defendants have not asked the Court to so certify them, *see id.* § 2679(d)(4). Thus, at this stage of proceedings, the precedents raising FTCA's exhaustion requirement are inapposite to this case.

*McNeil*'s clear holding that exhaustion of administrative remedies must occur prior to the commencement of FTCA litigation does not apply here as the plaintiff in *McNeil* specifically invoked the FTCA in his initial complaint, *see McNeil*, 508 U.S. at 108,—thus, the FTCA became the proper cause of action at the outset of the litigation. In this case, Plaintiff has not raised the FTCA in his complaint and the Attorney General has not yet made a FTCA certification. The Court is aware of no case applying the FTCA's exhaustion requirement to claims in the absence of a FTCA certification by the Attorney General. Indeed, without a certification that Defendants were acting with the scope of their federal employment, Plaintiff's negligence claims may well be construed as pendent state tort claims under 28 U.S.C. § 1367. As one court held, the FTCA's exhaustion requirement does not become operative until the Attorney General has certified that the employee was acting within the scope of his or her employment. *See Grancio v. De Vecchio*, 572 F. Supp. 2d 299, 310-11 (E.D.N.Y. 2008).

Indeed, the view that exhaustion is not required until the Attorney General has made a certification is consistent with a plain reading of 28 U.S.C. § 2679(d), which governs the mechanics of converting claims against individual employees into claims against the United States. Section 2679(d)(1) provides that

> *[u]pon certification by the Attorney General* that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court *shall be deemed an action against the United States under the provisions of this title* and all references thereto, and the United States shall be substituted as the party defendant.

(emphasis added). Section 2679(d) then provides that "[u]pon certification, any action or proceeding . . . shall proceed in the same manner as any action against the United States and . . . shall be subject to the limitations and exceptions applicable to those actions." (emphasis added).

11

Thus, under the plain language of the FTCA, a tort claim against an individual federal employee may not be deemed a "claim against the United States"— and, as a result, subject to the exhaustion requirement—until the Attorney General has certified that the employee was acting within the scope of his or her employment. *Grancio*, 572 F. Supp. 2d at 311.

Nevertheless, the Court need not precisely resolve this issue because it is satisfied that Plaintiff's negligence claim must be dismissed on alternative bases. First, if the Attorney General does not certify that Defendants were acting within the scope of their federal employment and so Plaintiff's claims do not become "claim[s] against the United States," then they would amount to garden-variety state law tort claims against Defendants. Under this scenario, the Court would divest itself of pendent jurisdiction as all federal causes of action have been dismissed from this case. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen . . . federal-law claims have dropped out of [a] lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

Second, if Plaintiff's claim is a "claim against the United States" and the FTCA is eventually invoked through certification, then the "discretionary function exemption" of the FTCA, *see* 28 U.S.C. § 2680(a), would serve as an absolute and independent bar to jurisdiction. Section 2680(a) states that the general waiver of sovereign immunity found in Section 1346(b) does not apply to

> any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Federal employees' acts or omissions come within the ambit of the discretionary function exemption only if two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (internal quotations and citations omitted).

The decision whether to put guardrails on bunk beds is clearly discretionary. Congress has granted the BOP broad discretion with regards to the safekeeping of inmates. *See* 18 U.S.C. § 4042(a) (2003) ("[BOP] shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . ."). Furthermore, the determination to install guardrails is susceptible to policy analysis based on the safety of inmates and correctional workers, the good order of the correctional facilities, and institutional resources. *See Paulino-Duarte*, 2003 WL 22533401, at *2. Thus, it is within BOP's sound "judgment or choice" and policy analysis whether to provide guardrails in its facilities' bunk beds and, as such, negligence claims against the United States would be barred by the FTCA discretionary function exemption. *Id.* (exemption bars claims that prison was negligent in failing to install guardrails on bunk beds.).

Accordingly, regardless of whether the FTCA's exhaustion requirement applies to Plaintiff assertions that MDC negligently failed to install guardrails on Plaintiff's bunk bed, the Court lacks jurisdiction over the claims as either divested pendent state law claims or as claims subject to the FTCA's "discretionary function exemption" to the waiver of sovereign immunity. They are hereby dismissed.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss is granted. Plaintiff's *Bivens* claims are dismissed with prejudice as he failed to exhaust administrative remedies. Plaintiff's claims asserting that MDC negligently failed to install guardrails on Plaintiff's bunk bed are dismissed without prejudice. The Complaint is dismissed in its entirety and this case is closed.

**SO ORDERED.**

Dated: Brooklyn, New York
March 30, 2010

/S/
───────────────────────────
SANDRA L. TOWNES
United States District Judge